**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MICHELLE LYON, *et al.*,<br>on behalf of themselves and all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICARE SYSTEMS, INC.,<br>doing business as<br>AMERICARE SENIOR LIVING,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 24-03207-CV-S-BP |

**ORDER (1) GRANTING MOTION TO CERTIFY CLASS, (2) DENYING APPROVAL OF PLAINTIFFS' PROPOSED CLASS NOTICE, AND (3) DIRECTING PARTIES TO PROPOSE A PHASE II SCHEDULING ORDER**

Pending is Plaintiffs' Motion to Certify, which asks the Court to certify a class (the "Class") under Rule 23 of the Federal Rules of Civil Procedure to assert claims under Missouri's Minimum Wage Law ("MMWL").[1] The Court previously resolved the parties' arguments regarding most of the issues, but deferred a final ruling and provided the parties an opportunity to address unresolved matters. (*See* Doc. 77 (hereafter the "Prior Order").) Plaintiffs responded to the Prior Order; Defendant was afforded an opportunity to respond to Plaintiffs' submission, (*see* Doc. 77, p. 14),[2] but the time for doing so has passed and it elected not to do so. The Court now considers the issues that were not resolved in the Prior Order.

[1] The Amended Complaint also mentions the possibility of certifying classes to assert claims under Missouri law for unjust enrichment, and under Kansas law for unjust enrichment and violation of the Kansas Wage Payment Act. (Doc. 25, ¶¶ 45, 47-48.) Plaintiffs' Motion does not seek certification of classes to assert these claims.

[2] Unless otherwise specified, all page numbers for documents filed with the Court are those generated by the CM/ECF system.

## I. BACKGROUND

The Prior Order resolved many issues related to application of Rule 23 of the Federal Rules of Civil Procedure to this case, and its analysis is incorporated herein. In summarizing the Prior Order and discussing the remaining issues, the Court may quote it without attribution and without including citations.

Defendant provides management services to more than 80 skilled nursing or assisted living facilities (the "Facilities") located in at least four different states, including Missouri. The Facilities are all owned by the same corporation, but each Facility is a distinct LLC, and Defendant has a separate Management Agreement with each of them.

The Facilities desired a method for procuring temporary workers ("Workers") to fill shifts when needed, so Defendant entered a Client Services Agreement with ShiftKey, LLC. Shiftkey maintains a website that allows healthcare facilities (including nursing homes) to solicit nurses and other healthcare workers to temporarily fill specific shifts. It also allows Workers to see the shifts that are being advertised. Workers then "bid" on the shifts they wish to work by indicating how much they wish to be paid; the "winner" of that shift is the worker willing to work the shift for the least amount of pay.

Plaintiffs are Workers who executed an agreement with Shiftkey permitting them to view and bid on shifts posted on ShiftKey's website. Plaintiffs bid on, won, and worked shifts posted on ShiftKey's website for temporary positions with at least one of the Facilities in Missouri. They allege they were misclassified as independent contractors (instead of being classified as employees), leading to them not receiving time and a half for overtime. But instead of asserting claims against the Facilities where they worked (or the Facilities' parent corporation) they have

sued Defendant, alleging it employed them and made (or at least is liable for) the decisions leading to them not receiving the overtime wage required by the MMWL.

In the Prior Order, the Court considered whether to certify the following class:

> All persons who worked at a facility in Missouri managed by Americare Systems, Inc. and who (1) obtained their position through ShiftKey, LLC and (2) worked more than 40 hours in a workweek from three years prior to the filing of the Complaint through the present.

(Doc. 77, pp. 6, 14.)

The Court then discussed the Rule 23 factors and concluded they were all satisfied except Rule 23(a)(1)'s requirement that "the class [be] so numerous that joinder of all members is impracticable." With respect to that issue, "Plaintiffs [initially] rel[ied] on a 700+ page spreadsheet, (Doc. 64-13), to support their assertion that more than 1,500 individuals worked more than 21,000 shifts obtained through ShiftKey at a Facility in Missouri managed by Defendant." (Doc. 77, p. 8.) However, as Defendant pointed out in opposing class certification, the Class did not consist of all Workers in Missouri but rather was limited to those who worked more than 40 hours in a workweek. In their Reply Suggestions, Plaintiffs repeated the figures from their Suggestions in Support, then explained that "[i]f one averages the amount of overtime worked by the class . . . at least 220 nurses worked about 11,600 overtime hours. It defies logic and the evidence in the record to conclude that fewer than 40 nurses worked overtime over a three-year period." (Doc. 75, pp. 9-10.) However, the Court found Plaintiffs' explanation insufficient:

> [T]he Court understands Plaintiffs to be contending the spreadsheet not only demonstrates the Class consists of at least 220 people, but that it also identifies those individuals. The Court agrees that a class comprised of 220 individuals is more than sufficient to satisfy the numerosity requirement. However, the Court has reviewed the spreadsheet, and it is not clear how Plaintiffs relied on it to (1) conclude that at least 220 Workers worked more than 40 hours in a week or (2) identify who those Workers were; in fact, it is not even clear that the spreadsheet contains the information necessary to conduct this analysis. Therefore, Plaintiff must explain how it ascertained the number of Class Members and their identities.

(Doc. 77, pp. 8-9.)

The Court also noted "Plaintiffs ha[d] not proposed a form of Notice to be sent to prospective class members [or] a plan for disseminating Notices." (Doc. 77, p. 13.) In addition to addressing numerosity, Plaintiffs were directed to "propose a Notice Plan (including identification of the claims administrator)." (Doc. 77, p. 14.)

As stated earlier, Plaintiffs responded to the Court's Order, and the deadline for Defendant to respond to Plaintiffs' submission has passed.

## II. DISCUSSION

### A. Class Certification

As explained above, the only remaining issue to be resolved is whether the numerosity requirement of Rule 23(a)(1) has been satisfied. Plaintiffs have now explained how they determined the class consists of more than 200 people, (Doc. 82, pp. 3-4), and there is no reason to set forth their calculations (particularly because Defendant does not dispute them). The Court now concludes the numerosity requirement has been satisfied; therefore, given the Court's conclusions in the Prior Order, the Motion for Class Certification, (Doc. 63), is **GRANTED**.

### B. Notice Plan

Plaintiffs have proposed a Notice (the "Rule 23 Notice") to be sent to prospective class members and a general plan for disseminating them in coordination with Notices to be sent in connection with Plaintiffs' Fair Labor Standards Act ("FLSA") claim. The Court addresses these issues separately.

#### *1. The Notice*

The Court does not approve the Notice Plaintiffs have proposed. It must be amended to address several issues.

First, the Rule 23 Notice repeatedly refers to the lawsuit as a whole, as opposed to focusing on the MMWL claim, and therefore can be misleading when describing the recipients' rights and options. For instance, on page 2 the Notice suggests the class member's options are to "do nothing and stay in the case" or "ask to be excluded" which will allow them to "get out of the lawsuit."[3] But opting out of the Rule 23 class will not affect a potential class member's right to opt into the case for purposes of the FLSA claim. And on the first page, the Rule 23 Notice advises the recipient he or she "do[es] not need to do anything to participate in this lawsuit," but that statement is incorrect insofar as the recipient may need to opt-in to participate in the FLSA claim being litigated in this lawsuit. There are other examples throughout the Notice.

The Court acknowledges the first page of the Notice includes the following statement:

> You may have previously received another Court-approved Notice explaining your right to opt-in and participate in this same lawsuit in connection with certain claims made under the federal Fair Labor Standards Act. This is a separate Notice, which relates to different claims under Missouri state law, and does not require you to do anything to participate in the lawsuit.

However, this statement appears relatively early in the Rule 23 Notice, may have little effect given the number of other seemingly contradictory statements, and is itself contradictory to the extent it refers to participation in the lawsuit as a whole.

Second, the Court issued rulings related to the FLSA Notice that apply equally to the Rule 23 Notice. (*See* Doc. 85.)[4] For instance, like the FLSA Notice, the Rule 23 Notice should include a disclaimer stating that Defendant disputes Plaintiffs' claim. And like the FLSA Notice, the Rule 23 Notice should not (as it does, for instance, on page 3) refer to allegations that that Defendant allegedly failed to compensate for time worked off the clock.

---

[3] For the sake of clarity, the Court refers to the page numbers of the Rule 23 Notice, not the Exhibit containing it.

[4] The Court acknowledges it issued the Order regarding the FLSA Notice after Plaintiffs submitted their proposed Rule 23 Notice.

Third, on page 3, the Rule 23 Notice states that Plaintiffs are seeking "unpaid wages due to the misclassification during the relevant time period, *plus treble* damages (triple the unpaid wages), attorneys' fees, and costs of the lawsuit." (Emphasis added.) However, the MMWL provides that a plaintiff may recover "the full amount of the wage rate *and* an additional amount equal to *twice* the unpaid wages as liquidated damages . . . ." Mo. Rev. Stat. § 290.527 (emphasis added). Plaintiffs must change the Rule 23 Notice or explain why the current statement—that they can recover the amount of the underpayment and an additional amount equal to triple the underpayment—is legally correct.

Finally, on Page 5, there is a discussion under the heading "Why would I ask to be excluded?" The Rule 23 Notice provides one reason—that the recipient is already asserting an MMWL claim against Defendant in another lawsuit. While this is certainly a valid reason to opt out in this case, there may be others—and given this one example is highly unlikely to be applicable, mentioning it at the exclusion of others might lead the recipient to believe it is the only reason why they should consider opting out. More importantly, given that this is a Court-approved notice, it is probably better that it does not include any legal advice at all. Therefore, Plaintiffs must remove the provision or explain why it should be included.

### ***2. Notice Plan***

Plaintiffs have presented the general outlines of a notice plan. To minimize confusion by the recipients, they propose sending the Rule 23 Notices after they complete the process of sending FLSA Notices and the opt-in period for the FLSA claims is expired. In the meantime, Plaintiffs intend to obtain information (including contact information) about the class members from ShiftKey (which seems similar to the process they must complete to send the FLSA Notices). They further propose that the notices be sent via U.S. Mail. (*See* Doc. 82, p. 5.)

This general outline is generally acceptable—but neither the parties collectively nor Plaintiffs on their own have proposed a schedule for completing any of the tasks necessary to disseminate the FLSA Notices or the Rule 23 Notices; for that matter, there is no schedule in place at all. Accordingly, the parties are directed to confer and jointly propose a Phase II Scheduling Order that contains deadlines for completing *all* remaining tasks in this litigation (including a deadline for submitting a revised Rule 23 Notice). The parties' joint proposal should also include (1) a proposed trial date and (2) an anticipated length of trial and shall be filed on or before January 15, 2026.

## III. CONCLUSION

Plaintiffs' Motion to Certify Class, (Doc. 63), is **GRANTED** and the Court certifies the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons who worked at a facility in Missouri managed by Americare Systems, Inc. and who (1) obtained their position through ShiftKey, LLC and (2) worked more than 40 hours in a workweek from July 17, 2021, to the filing of the Complaint through December 12, 2025.

In addition, on or before January 15, 2026, the parties shall jointly propose a Phase II Scheduling Order, as discussed in Part II(B)(2), above.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**DATE**: December 12, 2025